IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AMERICAN INDEPENDENCE MINES AND MINERALS CO., an Idaho joint venture composed of IVY MINERALS, INC., an Idaho corporation, and WALKER MINING COMPANY, an Idaho corporation; and IVY MINERALS, INC., an Idaho corporation,<br><br><br><br>Plaintiffs,<br><br>v.<br><br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, an agency of the United States; TOM VILSACK, in his capacity as Secretary of Agriculture of the United States; UNITED STATES FOREST SERVICE, an agency within the Unites States Forest Department of Agriculture; TOM TIDWELL, in his capacity as Chief of the United States Forest Service; HARVEY FORSGREN, in his capacity as Regional Forester for the Intermountain Region of the United States Forest Service; BRENT L. LARSON, in his capacity as Forest Supervisor of the Caribou-Targhee National Forest; and SUZANNE C. RAINVILLE, in her capacity as Forest Supervisor for the Payette National Forest,<br><br><br>Defendants. | Case No. CV-09-433-S-EJL<br><br>**MEMORANDUM**<br><br>**DECISION AND ORDER** |

# INTRODUCTION

Pending before the Court in the above-entitled matter is Plaintiff's Motion to Alter or Amend Order and Judgment. The parties have filed their briefing and matter is ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument.

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, American Independence Mines and Minerals Company, is an Idaho joint venture composed of Plaintiffs Ivy Minerals, Inc. and Walker Mining Company (collectively the "Plaintiffs"). (Dkt. No. 1.) Plaintiffs state they have been involved in efforts to develop the mineral resources of the Payette National Forest (PNF) in a fashion that minimizes and/or mitigates and remediates environmental impact and stimulates human welfare through economic development. (Dkt. No. 1.) To this end, Plaintiffs claim they have undertaken studies, own property, and are actively engaged in mining, exploration, and

environmental assessment activities in the Big Creek area of the Krassel Ranger District in the PNF, known as "MA-13." (Dkt. No. 1.) Such activities, Plaintiffs allege, require the use of "long-established roads, some of which are R.S. 2477 roads, to access existing mining claims and for exploration for mineral deposits which are locatable under the General Mining Act of 1872...." (Dkt. No. 1.)

On November 9, 2005, the United States Department of Agriculture (USDA) and the Forest Service (FS) enacted the Travel Management Rule requiring National Forests to designate a system of roads, trails, and areas that are open to motor vehicle use and prohibits the unauthorized use of motor vehicles off the designated system. *See* 70 Fed. Reg. 68,264; *see also* 70 Fed. Reg. 68,264-68,291 (Nov. 9, 2005). On October 3, 2008, following an extended public comment period, the USDA and FS issued its Record of Decision (ROD) applying the Travel Management Rule to the McCall and Kassel Ranger Districts in the PNF. Plaintiffs oppose the ROD's application of the Travel Management Rule arguing it has adversely affected them, and the public, by closing roads within the PNF that were previously open to the public, including R.S. 2477 roads. (Dkt. No. 1.) The implementation of the Travel Management Rule in the PNF, Plaintiffs further allege, fails to achieve the purposes and requirements of the National Environmental Protection Act (NEPA) and R.S. 2477 because there was no requirement that the existing roads in the National Forest be inventoried or

reviewed to determine their use by the public and/or property owners before the roads were designated. (Dkt. No. 1, ¶¶ 30, 31.) Plaintiffs argue the ROD will "have the effect of closing and criminalizing the Public Use of multiple roads in the MA-13 area...which were used by [Plaintiffs] and others prior to the issuance of the ROD." (Dkt. No. 1, ¶ 73.)

Following the denial of their appeal, Plaintiffs initiated this action in September of 2009 challenging: 1) November 9, 2005 Travel Management Plan; 2) October 3, 2008 ROD; and 3) January 8, 2009 decision denying Plaintiffs' appeal. (Dkt. No. 1.) Plaintiffs' claims allege violations of NEPA and the National Forest Management Act (NFMA). (Dkt. No. 1.) Defendants filed a Motion to Dismiss arguing the Plaintiffs lacked standing to file a NEPA action because their alleged harm is purely economic and, therefore, not within the environmental zone of interests protected by NEPA. (Dkt. No. 18.) Alternatively, Defendants also moved to dismiss for failure to state a claim. (Dkt. No. 19.)

On May 12, 2010 the Court entered an Order and Judgement granting the Defendants' Motion to Dismiss for lack of subject matter jurisdiction and dismissing the case in its entirety. (Dkt. No. 31, 32.)[1] The Court concluded the Plaintiffs' alleged injury is not within the zone of interests protected by NEPA or

---

[1] On June 10, 2010, the Court entered an Amended Order and Amended Judgment again granting Defendants' Motion to Dismiss for lack of subject matter jurisdiction and dismissing the case. (Dkt. Nos. 35, 36.) The Order was amended only as to the caption.

NFMA because the alleged harm is purely economic. (Dkt. No. 31, 35.) As a result, Plaintiffs filed the instant Motion asking the Court to amend its Order and Judgment and deny the Defendants' Motion to Dismiss or, alternatively, amend the dismissal and grant them leave to file an amended complaint. The motion is made pursuant to Federal Rules of Civil Procedure 59(e). The Defendants oppose the Motion. (Dkt. No. 37.)

## STANDARD OF LAW

Motions to alter or amend are governed by Federal Rule of Civil Procedure 59(e). *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1419 (9th Cir. 1984). The scope and purpose of such motions have been analyzed as follows:

> Motions for a new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued. Moreover they cannot be used to argue a case under a new legal theory.

*Federal Deposit Insurance Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986) (citations omitted).

> Whatever may be the purpose of Rule 59(e) it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge.
>
> . . .

> [A] rehash of the arguments previously presented affords no basis
> for a revision of the Court's order.

*Illinois Central Gulf Railroad Co. v. Tabor Grain Co.*, 488 F.Supp. 110, 122 (N.D. Ill. 1980). Where Rule 59(e) motions are merely being pursued "as a means to reargue matters already argued and disposed of and to put forward additional arguments which [the party] could have made but neglected to make before judgment, [S]uch motions are not properly classifiable as being motions under Rule 59(e)" and must therefore be dismissed. *Davis v. Lukhard*, 106 F.R.D. 317, 318 (E.D. Va. 1984); *see also Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983) ("Plaintiff improperly used the motion to reconsider to ask the Court to rethink what the Court had already thought -- rightly or wrongly."). The Ninth Circuit has identified three reasons sufficient to warrant a court's reconsideration of a prior order: (1) an intervening change in controlling law; (2) the discovery of new evidence not previously available; and (3) the need to correct clear or manifest error in law or fact, to prevent manifest injustice. *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Upon demonstration of one of these three grounds, the movant must then come forward with "facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Donaldson v. Liberty Mut. Ins. Co.*, 947 F. Supp. 429, 430 (D. Haw. 1996).

**DISCUSSION**

The Motion asks that the Order and Judgment be altered or amended to prevent manifest injustice and correct clear legal error; challenging the Court's determination that the Plaintiffs' claims assert purely economic interests outside of both NEPA's and NFMA's the zones of interest. (Dkt. No. 33, 34.) The Court erred, Plaintiffs argue, in its application of the Rule 12(b)(1) standard by failing to draw all reasonable inferences in their favor. When properly construed in their favor, Plaintiffs argue, their claims allege injuries falling within the zone of interests sufficient for standing. Plaintiffs focus on the following language from the Court's Order:

> Plaintiffs have not linked their pecuniary interest in mineral resources development to the physical environment or to an environmental interest contemplated by NEPA. Rather, Plaintiffs' injury is the inability to freely travel a road or roads that Plaintiffs wish to travel to access mineral resource development sites. Contrary to NEPA's environmental purpose, Plaintiffs' access on these roads would degrade the environment, not protect the environment.

(Dkt. No. 34, p. 1 *quoting* Dkt. No. 35, p. 11.) In particular, Plaintiffs challenge the Court's statement that "Plaintiffs' access on these roads would degrade the environment, not protect the environment." (Dkt. No. 33, p. 2.) This finding, Plaintiffs contend, is not supported in the record. Plaintiffs now ask the Court to amend its Order and find that "Plaintiffs have linked their pecuniary interest in

mineral resource development to the physical environment or to an environmental interest contemplated by NEPA." (Dkt. No. 33, p. 2.) Alternatively, Plaintiffs seek leave to amend their complaint and/or present evidence concerning the Court's finding regarding the use of these roads on the environment. (Dkt. No. 34, p. 6.)

## I.    Whether the Court Erred in Applying Rule 12(b)(1)

### A.    Rule 12(b)(1) Standard

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) in one of two ways. *See Thornhill Publ'g Co., Inc. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). The attack may be a "facial" one where the defendant attacks the sufficiency of the allegations supporting subject matter jurisdiction. *Id.* On the other hand, the defendant may launch a "factual" attack, "attacking the existence of subject matter jurisdiction in fact." *Id.* When considering a "facial" attack made pursuant to Rule 12(b)(1), a court must consider the allegations of the complaint to be true and construe them in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1988). A "factual" attack made pursuant to Rule 12(b)(1) may be accompanied by extrinsic evidence. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987). When considering a factual attack on subject matter jurisdiction, "the district court is ordinarily free to hear

evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citing *Thornhill*, 594 F.2d at 733). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill*, 594 F.2d at 733 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

However, "[t]he relatively expansive standards of a 12(b)(1) motion are not appropriate for determining jurisdiction ... where issues of jurisdiction and substance are intertwined. A court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *Augustine*, 704 F.2d at 1077).  In such a case, "the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine*, 704 F.2d at 1077 (citing *Thornhill*, 594 F.2d at 733-35).  This case does not require the Court to resolve substantive issues in determining whether jurisdiction is proper. Applying the above standard to this case, the Court finds as follows.

## B.     Zone of Interests

The Complaint filed in this action is 33 pages long and accompanied by 39 pages of exhibits. (Dkt. No. 1.) It alleges five NEPA and NFMA based claims applicable here: failure to adequately describe the "no action" alternative; failure to analyze impact on mining; failure to analyze economic impacts; failure to notify Plaintiffs of proposed action; and failure to evaluate the closure of R.S. 2477 roads. (Dkt. No. 1.)[1] The claims are raised under the Administrative Procedure Act (APA), 5 U.S.C. § 702. *See Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 939 (9th Cir. 2005). Standing to sue under these statutes requires the Plaintiffs to establish a final agency action adversely effected them and that, as a result, they suffered an injury that falls within the "zone of interests" of the statutory provision they seek to enforce. *City of Las Vegas, Nev. v. F.A.A.*, 570 F.3d 1109, 1114 (9th Cir. 2009); *see also Western Watersheds Project v. Kraayenbrink*, 620 F.3d 1187 (9th Cir. 2010) (quoting *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111-12 (9th Cir. 2002)). The party asserting federal jurisdiction has the burden of establishing standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

---

[1] Plaintiffs raised eight claims in their complaint but later withdrew claims five, seven and eight pursuant to a Stipulation. (Dkt. Nos. 25, 29.) Claims one, three, and six allege NEPA violations. Claims two and four allege NFMA violations.

The zone of interests applicable here are found in NEPA.[1] "The overall purpose of NEPA is to declare a national commitment to protecting and promoting environmental quality." *Ashley Creek*, 420 F.3d at 945 (citation omitted). Thus, "the protection of the environment falls within NEPA's zone of interests." *Kootenai Tribe of Idaho*, 313 F.3d at 1113 (citations omitted). "[B]ecause NEPA was intended to protect the environment, the harm a NEPA plaintiff asserts must 'have a sufficiently close connection to the physical environment.'" *Silver Dollar Graving Ass'n v. United States Fish and Wildlife Serv.*, No. 07-35612, 2009 WL 166924 (9th Cir., Jan. 13, 2009) (quoting *Metro. Edison Co. v. People Against Nuclear Energy*, 460 U.S. 766, 778 (1983)).

NEPA's zone of interests do not, however, include solely or purely economic injuries. *See Ashley Creek*, 420 F.3d at 941. "[A] plaintiff who asserts purely economic injuries does not have standing to challenge an agency action under NEPA." *Silver Dollar*, 2009 WL 166924, * 1 (quoting *Nev. Land Action Ass'n v. United States Forest Serv.*, 8 F.3d 713, 716 (9th Cir. 1993)). However, standing to sue under NEPA may exist even where the party's interest is primarily

---

[1] Counts two and four of the Complaint raise claims under NFMA which governs the management of national forests. NFMA's goals include creating a forest management plan. *See* 16 U.S.C. § 1604(g)(3). The zone of interest applicable here is found in the statute which specifies the consideration and protection of: recreational use, environmental preservation, and ensuring the continued diversity of plant and animal communities. *See* 16 U.S.C. § 1604(g)(3)(A)-(B). The parties' briefing on the instant Motion addresses only NEPA's zone of interests.

economic so long as the party also alleges an "environmental interest or economic injuries that are 'causally related to an act within NEPA's embrace.'" *Ranchers Cattlemen Action Legal Fund v. USDA*, 415 F.3d 1078, 1103 (9th Cir. 2005) (citation omitted). Thus, Plaintiffs' in this case must demonstrate a link between their economic interests and NEPA's environmental zone of interests. The Plaintiffs have failed to do so.

### C.    Court's Order Applied the Correct Standard

The Court's prior Order concluded "Plaintiffs have not linked their pecuniary interest in mineral resource development to the physical environment or to an environmental interest contemplated by NEPA. Rather, Plaintiffs' injury is the inability to freely travel a road or roads that Plaintiffs wish to travel to access mineral resource development sites." (Dkt. No. 35, p. 12.) In reaching this conclusion, the Court considered the allegations raised in the Complaint as well as the arguments made in the Plaintiffs' response to the Motion to Dismiss and construed the allegations in the light most favorable to the Plaintiffs.

The Complaint's principle allegations challenge that the Defendants failed to compile an accurate assessment of the existing road network so as to properly analyze the status quo in relation to the impact of the road closures in the alternatives and failed to recognize and analyze the impact on mineral exploration and the economy. (Dkt. No. 1.) Paragraphs 30 and 31 of the Complaint state:

30. The lack of an accurate assessment of the existing road network has denied [Plaintiffs], the public, the PNF, and other agencies the ability to properly and thoroughly analyze the environmental and ecological consequences and the interrelated social and economic consequences of the alteration of travel management procedures.

31. The failure of both the Travel Management Rule and the PNF's implementation of the rule to recognize and describe any R.S. 2477 roads within the PNF has denied [Plaintiffs], the public, the PNF, and other agencies the ability to properly and thoroughly analyze the environmental and ecological consequences and the interrelated social and economic consequences of the alteration of travel management procedures.

(Dkt. No. 1, ¶¶ 30, 31.)[1] Their interests are intertwined with the environment, Plaintiffs argue, as they seek full and impartial examination of the EIS of the environmental and economic effects of closing the roads Plaintiffs use. (Dkt. No. 26, p. 19.) This is evident, Plaintiffs assert, from the overall nature of the Complaint itself and, specifically, allegations such as those in Paragraph 23 noting Plaintiffs had "engaged in environmental and geophysical studies" in the subject area which required access by the very roads subject to closure. (Dkt. No. 26, p. 14 n. 14.) To this end, Plaintiffs note their geologists, geophysicists, and environmental consultants regularly travel roads in the PNF to further Plaintiffs' business interests and then conclude that because Defendants do not suggest these

_____

[1] Paragraphs 58 and 59 of the Complaint also allege the Travel Management Rule is subject to NEPA's requirements and it failed to require an inventory of existing roads in National Forests in use before designation of roads. (Dkt. No. 1, ¶¶ 58, 59.)

"business interests are not intertwined with use of these roads...[they] readily pass[] the test." (Dkt. No. 26, p. 15.) In sum, Plaintiffs' position is that their "business interests are intertwined with...NEPA's objectives." (Dkt. No. 1, p. 1.)

The Court's prior Order considered the Plaintiffs' arguments pointing to their efforts at remediation, studies, and assessment. The Court concluded such tasks were not environmental in nature but were completed in pursuit of Plaintiffs' economic interests in mineral resource development and, therefore, do not fall within the environmental zone of interests. (Dkt. No. 35, p. 13-15.) Though Plaintiffs argue otherwise, the Complaint's allegations center upon activities done for the purposes of furthering Plaintiffs' mining activities. Regardless of any findings concerning mining's impact on the environment,[1] the fact remains the allegations in the Complaint are based on Plaintiffs' mining interests which is purely economic. Having again carefully reviewed the Plaintiffs' Complaint, briefing, arguments, and the record, the Court finds it correctly applied the Rule 12(b)(1) standard in this case by construing the allegations in the light most favorable to the Plaintiffs.

---

[1] Plaintiffs' Motion challenges language in the Court's prior Order regarding the impact continued use of the roads would have on the environment. (Dkt. No. 34, p. 1.) The Court will address this issue in Section II of this Order.

### D.    Sediment Load Argument Not Previously Raised

In this Motion, Plaintiffs bring a new basis in support of their argument that their claims are linked to environmental interests sufficient for standing purposes. Plaintiffs now argue their interest in keeping the roads open and maintained for their use in mining exploration is linked to NEPA's objectives because closure of roads may increase sediment load, thereby harming the environment. (Dkt. Nos. 34, 38.) This argument was not previously raised by the Plaintiffs in their initial briefing on the Motion to Dismiss. (Dkt. No. 26.)  There, Plaintiffs' arguments centered on compliance with NEPA's requirements,[1] Plaintiffs' regular use and travel in the area,[2] and standing for pro-business plaintiffs.[3] There was, however,

---

[1] The Plaintiffs argued its case sought "full and impartial examination in the EIS of the environmental and economic effects...of closing the roads that it uses. In other words, [Plaintiffs'] concerns are intertwined with the environment." (Dkt. No. 26, p. 14) (quotations omitted).  There, Plaintiffs pointed to NEPA's requirement that an EIS explore "the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity." 42 U.S.C. § 4332(2)(C)(iv); NEPA § 102(2)(C)(iv); (Dkt. No. 26, pp. 20-21.) (Plaintiffs' "precise criticism of the EIS is that it fails to contain 'a discussion of the impacts on productivity that are [] intertwined with the environment" and their "economic concern is very much tethered to the environment.")

[2] Because its consultants regularly travel the roads at issue, Plaintiffs argued their concern with the EIS, i.e. whether it complies with § 102(2)(C)(iv), is linked to the environment and NEPA's zone of interests. (Dkt. No. 26, pp. 20-22) (Plaintiffs argued they pass the *Ashley Creek* test because "[t]he roads now subject to closure are part of the physical environment examined in the EIS."). Plaintiffs argument was because their interests exist in the same "human environment" that is the subject of the EIS then they fall within NEPA's zone of interests. ("roads now subject to closure are part of the physical environment examined in the EIS." (Dkt. No. 26, pp. 16-17.) Plaintiffs distinguished their claims from other "failed EIS challenges" and contend they seek "NEPA compliance to ensure sound consideration of environmental, social, and economic issues affecting the very roads that are the subject of the EIS, roads that [they

no mention of the sediment load argument. Further, nowhere in the Complaint is

there an allegation regarding increased sediment loads let alone any allegations

relating to environmental concerns within the zone of interests. (Dkt. No. 1.) Just

the opposite, the Complaint's allegations are all centered on the Plaintiffs' interests

in keeping roads in the PNF open and maintained for their use in mining

exploration and development.

    Raising this argument at this stage in a motion to alter or amend is outside

the scope and purpose of such motions. *See* Fed. R. Civ. P. 59(e). A Rule 59(e)

motion may not be used to raise arguments or present evidence for the first time

when they could reasonably have been raised earlier in the litigation. *See 389*

*Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999); *Kona Enters.,*

---

have] used regularly." (Dkt. No. 26, pp. 9-10.) Plaintiffs conclude that because the roads are physically located in the forest and Plaintiffs are interested in using the roads means the Plaintiffs' interests are intertwined with environmental concerns. (Dkt. No. 26, p. 10.) Shared physical proximity, however, does not necessarily also mean a shared zone of interests.

    [3] Plaintiffs also spent a great deal of time on the topic of standing for pro-business/corporate plaintiffs versus pro-environmental plaintiffs. In their initial opposition to the Defendants' Motion to Dismiss, the Plaintiffs argued categorizing their interests as "pro-business" as opposed to "pro-environmental" and, therefore, outside NEPA's zone of interest is inconsistent with the principles of prudential standing. (Dkt. No. 26.) Instead, Plaintiffs argue, their interests are in-line with NEPA's requirements as environmental protection and proper adherence to NEPA's procedures is necessary to and in the Plaintiffs best interests. (Dkt. No. 26, pp. 7-8.) Pointing to *Bennett v. Spear*, 520 U.S. 154 (1997), Plaintiffs contend that business interests may challenge an EIS if they demonstrate that their commercial interests are intertwined with the environmental interests that are the subject of the EIS. (Dkt. No. 26, p. 4.) The Court resolved this argument in the prior Order. (Dkt. No. 35, p. 11.)

*Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Accordingly, the Court denies the motion on this basis.

> ### E. Plaintiffs' New Sediment Load Argument Fails to Establish Standing

Even considering the Plaintiffs' new sediment load argument, the Court finds the Plaintiffs have failed to link their economic interest in mineral resource exploration and development to NEPA's zone of interests. The Court has again reconsidered the allegations raised in the Complaint and has construed those allegations in the light most favorable to the Plaintiffs. Having done so, the Court still finds the allegations do not support Plaintiffs' contention that their economic interests are linked to the statutes' zones of interest. The Plaintiffs' interest in keeping roads open and maintained is economic. Plaintiffs' claims are done for the purpose of ensuring the roads sought to be used by Plaintiffs for their economic purposes will be maintained and open. These economic concerns of the Plaintiffs are not "interrelated with the environmental affects" of the proposed action in this case. *See Ashley Creek*, 420 F.3d at 943.

Plaintiffs point to paragraph 22 of their Complaint as evidence of "linkage between the admitted economic interest of [Plaintiffs] and the environmental interests contemplated by NEPA." (Dkt. No. 38, p. 1.) Paragraph 22 of the Complaint states:

> [Plaintiff] has been involved, consistent with the concepts of
> multiple-use and sustained yield within the National Forests, in
> efforts to develop the mineral resources of the Payette National
> Forest in a fashion that minimizes and/or mitigates and remediates
> environmental impact and stimulates human welfare through
> economic development.

(Dkt. No. 1, ¶ 22.) Drawing all reasonable inferences in their favor, Plaintiffs

contend this demonstrates the Court erred in finding "Plaintiffs' access on these

roads would degrade the environment, not protect the environment." (Dkt. No. 38,

p. 2 *quoting* Dkt. No. 35, p. 12.) The remediation of environmental impacts

referred to in Paragraph 22, Plaintiffs argue, are not limited to mining activities

but, instead, their remediation efforts include maintenance of roads for use by

themselves and the public in order to reduce the sediment load.

As the Court stated in its prior Order, Paragraph 22's reference to the

Plaintiffs' efforts at remediating, minimizing, and mitigating environmental impact

are all done in an effort to develop the mineral resources of the PNF. (Dkt. No. 35,

pp. 12-13.) The language of Paragraph 22 specifically states the Plaintiffs'

activities are "in efforts to develop the mineral resources...." (Dkt. No. 1, ¶ 22.)

Likewise, the environmental and geophysical studies referred to in Paragraph 23 of

the Complaint were done in "furtherance of its efforts to develop the mineral

resources of" the PNF. (Dkt. No. 1, ¶ 23.) Even construing these allegations in

favor of the Plaintiffs, the fact remains that the interests alleged in the Complaint

are not environmental and not linked to NEPA's zone of interests. Both the studies and assessment activities were done in furtherance of and in efforts to develop mineral resources which are unquestionably economic. The paragraphs relate to the manner in which Plaintiffs pursue their economic mining interests. (Dkt. No. 35, p. 13.)

### F.     Plaintiffs' Similar to Intervener's

Plaintiffs also attempt to liken themselves to Valley County whom this Court allowed to intervene in this matter. The Court disagrees. Valley County's interests fall squarely within the zone of interest protected by NEPA and NFMA; intrinsic and aesthetic enjoyment from and recreational use of the roads. (Dkt. No. 35, p. 18-20.) Plaintiffs, on the other hand, do not allege interests akin to Valley County's. As discussed above, it is clear from the Complaint that the Plaintiffs interests in use and maintenance of the roads begin and end with their pecuniary economic purpose.

## II.     Plaintiffs' Objection to Court's Finding

The Plaintiffs also object to the particular language from the Court's prior order stating: "Contrary to NEPA's environmental purpose, Plaintiffs' access on these roads would degrade the environment, not protect the environment." (Dkt. No. 34, p. 1 *quoting* Dkt. No. 35, p. 11.) Plaintiffs assert there are no allegations in

the pleadings supporting the conclusion that keeping the roads open will degrade the environment as stated in is paragraph. (Dkt. No. 34, p. 1.) The Court agrees with the Plaintiffs regarding this particular statement. (Dkt. No. 34, p. 1.) As such, the Motion to Alter or Amend is granted in this respect and the sentence will be stricken from the Order. The end result, however, remains the same. For the reasons stated in the Court's prior Order and herein, the allegations and claims raised in the Complaint are not within the zones of interests. Accordingly, the Defendants' Motion to Dismiss is well taken and will be granted.

## III.     Motion to Amend Complaint

Plaintiffs also request an opportunity to amend their complaint and/or to present further evidence. Federal Rule of Civil Procedure 15(a) provides that after responsive pleading has been filed, a party may amend their pleading only by leave of the court or written consent of the adverse party.  Such leave "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  "Liberality in granting a plaintiff leave to amend is subject to the qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is not futile.  Additionally, the district court may consider the factor of undue delay." *Bowles v. Reade*, 198 F.3d 752, 757-58 (9th Cir. 1999) (citation omitted). Having reviewed the record in this matter, the Court denies the request to file an amended complaint.

Plaintiffs seek leave to amend their complaint and offer additional evidence in support of their allegation that the ROD's proposed closure of the roads will harm the environment by increasing sediment load. This, they believe, will satisfy the standing requirement of a link between their interests and NEPA's zone of interests. Such amendment would be futile. This argument fails to show Plaintiffs' economic interests and the environmental effects of the proposed action are intertwined. Even if there is evidence of increased sediment loads resulting from the closure of roads, the fact remains that Plaintiffs' interest here is economic. As discussed above, Plaintiffs desire to keep roads open is driven by their economic interest in exploring and developing mining opportunities in the PNF.[1] This economic mining interest is not linked to NEPA's zone of interests merely by alleging that closing roads might increase sediment load. Plaintiffs' attempts to articulate claims that are linked to the environment continue to be economic injuries in disguise.

The Plaintiffs' allegations, even when construed in their favor, fail to fall within NEPA's zone of interests. As stated in the Court's prior Order, Plaintiffs interests asserted in this action are not within the zone of interests of these statutes as they are raised solely for economic interests. Again, the Plaintiffs' interest in the maintenance and use of the roads at issue arise from their economic mining

---

[1] The Court does not categorically find that pro-business plaintiffs cannot find standing in similar cases. The ruling here is limited to the facts and record in this case.

interests. The interests as alleged in the Complaint here are not intertwined with the environment.

Furthermore, it does not appear Plaintiffs previously raised the argument regarding increased sediment load due to road closures as required by the APA. "In order to seek judicial relief of a NEPA issue, the [Plaintiffs] were required to first raise their concerns with the agency to allow 'the agency to give the issue meaningful consideration.'" *See Wyoming State Snowmobile Ass'n. v. United States Fish and Wildlife Serv.*, ___ F.Supp.2d ___, No. 09-cv-00095-F, 2010 WL 3743933, *11 (D. Wyo. Sept. 10, 2010) (quoting *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council*, 435 U.S. 519, 553-54 (1978) (citations omitted). "The purpose of this rule is to ensure that reviewing courts do not substitute their 'judgment for that of the agency on matters where the agency has not had an opportunity to make a factual record or apply its expertise.'" *Id.* (citation omitted).

Attached to the Complaint are the Plaintiffs various comments presented to the Defendants during the comment period. (Dkt. No. 1, Ex. 1.) No where in them do the Plaintiffs present the sediment load argument or materials that they now seek to present to the Court.[1] Because it does not appear this issue was raised

---

[1] In the administrative appeal, Plaintiff AIMMCO makes reference to "environmental studies" it submitted relating to the Smith Creek road that it claims shows that "vehicle travel on the existing Big Creek area roads does not have measurable negative environmental impact, and that simple, user-constructed

previously by the Plaintiffs, the Defendants may not have been put on notice or have an opportunity to consider the argument during the administrative process and the Plaintiffs are foreclosed from raising the argument at this stage in these proceedings.

Though it may be that the sediment load argument was raised by another entity, it is unclear whether that happened in this case. *See Id.* ("For NEPA challenges, entities may challenge an issue they failed to address if someone else brought "sufficient attention to the issue to stimulate the agency's attention and consideration of the issue during the environmental analysis comment process.") (citations omitted); *see also Benton County v. United States Dept. of Energy*, 256 F.Supp.2d 1195, 1198-99 (E.D. Wash. 2003) ("a plaintiff, or another, must bring sufficient attention to an issue to stimulate the agency's attention and consideration of the issue during the environmental analysis comment process. A failure to do so bars judicial review.") (citations omitted). Regardless of whether it was raised previously, the Court finds the sediment load argument does not establish a link between the Plaintiffs' economic interests and NEPA's zone of interests sufficient

---

maintenance...significantly enhances the environmental condition." (Dkt. No. 1, Ex. 2.) These studies too do not appear to address increased sediment loads caused by road closures. Instead, they appear to relate to the environmental impact of vehicle travel on the roads. In the most recent Motion, Plaintiffs attach a different document issued by the FS entitled "Reduction of Soil Erosion on Forest Roads" (Dkt. No. 34-1, Att. A) which they purport to offer as evidence supporting their new sediment load argument. (Dkt. No. 38, p. 3.)

for standing purposes. Accordingly, the request to file an amended complaint and/or additional evidence is denied.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion to Reconsider and/or Alter or Amend Judgment (Dkt. No. 33) is **GRANTED IN PART AND DENIED IN PART** as follows:

1.  The Motion is **GRANTED** with respect to the Court's finding on page 11 which, as stated herein, is now **STRICKEN**.

2.  The Motion is **DENIED** in all other respects.

DATED:  **December 16, 2010**

Honorable Edward J. Lodge
U. S. District Judge